(No. 50196.—■■■■■■■■)

GIVENROD-LIPE, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Doris Jean Givenrod, Appellee.)

*Opinion filed May 16, 1978.*

KLUCZYNSKI, J., took no part.

Keefe and De Pauli, of East St. Louis, for appellant.

Paul M. Caldwell, of Caldwell, Lewis & Troutt, of Benton, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The employer, Givenrod-Lipe, Inc., appeals from a judgment of the circuit court of Franklin County, which

confirmed the Industrial Commission's affirmance of an arbitrator's award for the death of its employee, Clifford C. Givenrod. The sole issue on appeal is whether the decedent's death arose out of and in the course of his employment.

Givenrod-Lipe, Inc., is an engineering firm with headquarters in Benton. It is engaged as a consulting engineer by the Rend Lake Conservancy District on a retainer basis and performs substantial work for the district in connection with the Rend Lake project. The Rend Lake project, a flood control project, is jointly operated by the conservancy district, the State of Illinois, and the United States Army Corps of Engineers. The firm also has direct business dealings with the Corps of Engineers with regard to other projects, including a substantial Federal survey contract which was finalized shortly after Givenrod's death.

The decedent was president and a member of the board of Givenrod-Lipe, Inc. Although he was a licensed professional engineer and registered land surveyor, his duties with the firm primarily consisted of the solicitation and promotion of business. At various times of the year, the operators of the Rend Lake project held joint meetings to coordinate their activities, and Givenrod generally attended as a representative of the firm.

The conservancy district scheduled a social dinner meeting on July 16, 1973, in order to introduce the new colonel who was to head the district office of the Corps of Engineers in St. Louis. Although no official business was scheduled, the purpose of the meeting was to get acquainted with the new colonel on a first-name basis in order to facilitate business relations in the future.

The meeting was held at the Perfection Club located on Route 51 south of Du Quoin, approximately 18 miles from Benton. Twelve to fourteen people attended, including six members of the board of trustees of the conservancy district, the treasurer and the attorney for the

district, the decedent, and several members of the Corps of Engineers. According to the usual routine, a round of drinks was to be served, followed by dinner at 7:30 p.m. The only guest to testify before the arbitrator was John Douglas, a member of the board of trustees of the conservancy district. He testified that the decedent was somewhat late due to another business meeting and did not arrive until the guests were about to begin dinner at 7 to 7:30 p.m. Douglas stated that Givenrod attended all of the district's meetings; that he considered Givenrod's attendance at this particular meeting to be mandatory, and that, in his opinion, Givenrod had attended in his professional capacity. Douglas testified that he left with two other nondrinkers when the meeting broke up at 9 p.m., or shortly thereafter. Although other people remained at the table, Douglas did not specifically remember seeing Givenrod when he left. There is no evidence that Givenrod had left before Douglas or at what time he did leave.

According to stipulated facts, Givenrod was killed in an automobile accident at 11:05 p.m., four to five miles east of the Perfection Club on Route 14, the most direct route from the club to Benton. His wife filed a claim for compensation on behalf of herself and their three minor children, which resulted in the award previously noted.

The employer argues that the petitioner failed to prove by a preponderance of the evidence that Givenrod's death arose out of and in the course of his employment. While conceding that the Commission is free to draw reasonable inferences from circumstantial evidence, the employer contends that the Commission cannot speculate or conjecture as to Givenrod's activities during the 1½- to 2-hour period between the time he was seen at the meeting and the time of his death. The employer cites *Cannon Construction Co. v. Industrial Com.* (1968), 38 Ill. 2d 584, and *Thomas Reed & Son v. Industrial Com.* (1967), 36 Ill.

2d 612, in support of this point.

In our opinion, both of those cases are distinguishable. In *Cannon,* the employee delivered plans to a contractor at 4:45 p.m. in a tavern. He then drank beer, visited another tavern for dinner, and left for home at 9 p.m. At 9:50 p.m., he was killed in an automobile accident. This court held that there was no evidence that he transacted any business for his employer subsequent to 4:45 p.m., and accordingly affirmed the reversal of the award. In *Reed,* the employee, an electrical foreman, had gone home after work, arriving at 5:45 p.m. After changing his clothes and eating supper, he left again at 9:30 p.m. At about 10:30 p.m., he was seen checking an electrical panel of the restaurant where he had been installing electrical equipment. He was killed in an automobile accident at 12:04 a.m. on the route to his home. This court reversed the Commission's award, holding that it was based on conjecture and speculation, since there was no evidence that the decedent performed any services for his employer after 10:30 p.m., or as to his activities between 10:30 p.m. and 12:04 a.m. We also noted that there was no evidence that he was authorized or asked to work any overtime, and the owner of the restaurant testified he had not asked the decedent to do any work that night.

In the instant case, the record clearly shows that Givenrod's attendance at the meeting was in the course of his employment, and that fact is not disputed here. John Douglas' testimony indicates that Givenrod attended the meeting, but does not show whether he was still there when Douglas left at 9 p.m. While Douglas indicated the meeting itself broke up around 9 p.m. when he and two others left, he also stated that other guests were still seated. The parties to this action also stipulated that the accident occurred on the most direct route from the Perfection Club to Benton, where decedent's home and office were located. While there is no evidence as to the

reasonable travel time between the Perfection Club and Benton, we believe that there was sufficient evidence for the arbitrator and the Industrial Commission to reasonably infer that Givenrod did not depart when Douglas did but stayed at the Perfection Club with the others who had attended the meeting, participating in the social functions which were essentially the reason he was requested to attend the meeting. It could also be reasonably inferred that Givenrod was on his way home from the dinner meeting at the time of his death. It is well established that if an employee is injured during travel to or from other than the normal place of employment, undertaken incidentally to the employment and for the accommodation of the employer, such injuries arise out of and in the course of employment. See *Burmeister v. Industrial Com.* (1972), 52 Ill. 2d 84; *Cannon Construction Co. v. Industrial Com.* (1968), 38 Ill. 2d 584; *Thomas Reed & Son v. Industrial Com.* (1967), 36 Ill. 2d 612; *Urban v. Industrial Com.* (1966), 34 Ill. 2d 159.

In light of the evidence, we find that the award of the Commission is not contrary to the manifest weight of the evidence and affirm the judgment of the circuit court of Franklin County.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.